**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIONEL ANDRÉS MESSI CUCCITTINI and LMGM, S.L.U.,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>    Defendants. | Case No. 26-cv-02468<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs LIONEL ANDRÉS MESSI CUCCITTINI ("MESSI") and LMGM, S.L.U. ("LMGM") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, unincorporated associations, and foreign entities identified on Schedule A[1] to this Complaint (collectively, "Defendants"):

**INTRODUCTION**

1.    This action has been filed by Plaintiffs to combat online counterfeiters who trade on Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' trademark, which is covered by U.S. Trademark Registration No. 4,948,078 (the "MESSI Trademark").

---

[1]    Plaintiffs are filing a motion to temporarily seal Schedule A simultaneously with the filing of this Complaint.

2.      The MESSI Trademark is valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificate for the MESSI Trademark is attached hereto as **Exhibit 1**.

3.      Defendants are improperly advertising, marketing and/or selling unauthorized and illegal products infringing upon Plaintiffs' MESSI Trademark (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the MESSI Trademark, Defendants cause confusion and deception in the marketplace.

4.      Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms Temu and Walmart (collectively, the "Marketplace Platforms").

5.      Defendants design the online marketplace accounts to appear to be selling genuine products bearing the MESSI Trademark while selling inferior imitations of such products.

6.      The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of the MESSI Trademark, as well as to protect consumers from unknowingly purchasing Counterfeit Products.

8.     As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademark and goodwill and, therefore, seek injunctive and monetary relief.

9.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District.

10.     In addition, each Defendant has offered to sell and ship counterfeit products into this Judicial District.

## SUBJECT MATTER JURISDICTION

11.     This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)–(b).

12.     This Court has jurisdiction over the unfair deceptive trade practices claims in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

13.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and (3), or, in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District; derive substantial revenue from business transactions in New York and in this Judicial District; and/or otherwise avail themselves of the privileges and protections of the laws of

3

the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

14.     In addition, because Plaintiffs sell genuine merchandise and apparel bearing the MESSI Trademark in this Judicial District, Defendants' illegal counterfeiting and infringing actions have injured Plaintiffs in this Judicial District through lost sales and customers. Defendants' actions have also harmed Plaintiffs by confusing and deceiving consumers in this Judicial District who can view Defendant Internet Stores such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

15.     For example, Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Exemplar screenshots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to this Judicial District are attached as Exhibit 2 to the Declaration of Dominik Fourné, filed simultaneously with the filing of this Complaint.

16.     Upon information and belief, Defendants also were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in New York and in this Judicial District, through accounts (the "User Account(s)") on e-commerce sites including the Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the United States, including New York and in this Judicial District, can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for and purchase Counterfeit Products for

4

delivery in the United States, including New York and in this Judicial District, as a means for establishing regular business with the United States, including New York and this Judicial District.

17.    Defendants have transacted business with consumers located in the United States, including New York and this Judicial District, for the sale and shipment of Counterfeit Products.

18.    Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of trademark infringement in this Judicial District and do substantial business in this Judicial District.

## THE PLAINTIFFS

19.    Plaintiff MESSI is an individual with dual Argentine and Spanish citizenship currently domiciled in the United States. Plaintiff LMGM is a sociedad limitada unipersonal organized under the laws of the Principality of Andorra with its principal place of business in Escaldes-Engordany, Andorra.

20.    MESSI owns all rights in, and LMGM is the exclusive licensee of, the MESSI Trademark (attached as Exhibit 1):

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 4,948,078 | | April 26, 2016 |

## THE DEFENDANTS

21.    Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

5

22.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

**THE MESSI PRODUCTS**

23.     MESSI is a world-famous soccer player and the most decorated soccer player in history, with 48 team trophies, including the 2022 World Cup.[2] Through MESSI's success and fame, he is consistently regarded as one of the greatest soccer players in the history of the sport, resulting in his personal brand exploding in popularity each year.[3] In 2025 alone, approximately 1.3 million of MESSI's jerseys were sold worldwide.[4] MESSI's ability to boost sales and customer traction has been coined "The Messi Effect" and "Messi Mania."[5] That ability was showcased when his transfer to Inter Miami CF increased the Miami-based soccer team's global Google searches by 1,200%, and searches for MESSI collectables—spanning trading cards and memorabilia—increased 75% globally on websites such as eBay. Online retailer Soccer.com also noted it sold half a year's worth of MESSI-printed jerseys in just one day after his transfer.

24.     In 2016, MESSI obtained the registration for the MESSI Trademark. The Messi Store, which sells merchandise using the MESSI Trademark (the "MESSI Products"), recorded

---

[2]     Foot Africa, *After Messi's newest title: Top five most decorated players ever — one of them Egyptian*, Yahoo! Sports (Dec. 8, 2025), https://sports.yahoo.com/articles/messi-newest-title-top-five-194000567.html.

[3]     SI Staff, *The 55 Greatest Soccer Players of All Time*, Sports Illustrated (Sep. 22, 2025), https://www.si.com/soccer/the-50-greatest-soccer-players-of-all-time; MLSsoccer staff, *Lionel Messi leads MLS best-selling jerseys in 2025*, Major League Soccer (June 18, 2025, at 1:00 PM), https://www.mlssoccer.com/news/lionel-messi-leads-mls-best-selling-jerseys-in-2025.

[4]     Daniel L. Peinado, *How Real Madrid made jersey sales history in 2025*, Diario AS (Dec. 19, 2025, at 11:41 EST), https://en.as.com/soccer/how-real-madrid-made-jersey-sales-history-in-2025-f202512-n.

[5]     Dan Hajducky, *The Messi Effect: New Miami star brings big business to MLS*, ESPN (Aug. 1, 2023, at 10:59 AM ET). https://www.espn.com/soccer/story/_/id/38082893/the-messi-effect-new-miami-star-brings-big-business-mlsESPN.

$1.69 million in revenue in 2023.[6] The MESSI Products span a wide range of consumer sectors, including, without limitation, sports apparel, footwear, athletic equipment, bags, electronics, accessories, and related lifestyle goods on the official Messi Store (www.themessistore.com) and Messi Fragrances (www.messifragrances.com), as well as on specialty and limited-edition products with brand partners such as Adidas and Stanley.

25.    Since the launch of the MESSI Collection, Plaintiffs—and, where applicable, Plaintiffs' authorized licensees—have been the sole and exclusive sources of lawful or genuine MESSI Products in the United States, including New York and this Judicial District.

*Examples of Genuine MESSI Products Incorporating the MESSI Trademark*



---

6      Brendan Coffey, *Soccer Transfer: Messi Brand Sold to Pay Bills for Fashion Also-Ran*, Sportico (Apr. 5, 2025, at 9:00 AM), https://www.sportico.com/business/commerce/2024/lionel-messi-brand-sale-1234773939.



26.    The MESSI Trademark is and has been the subject of substantial and continuous marketing and promotion by Plaintiffs.  Plaintiffs have and continue to widely market and promote the MESSI Trademark in the industry and to consumers.

27.    The registration for the MESSI Trademark constitutes prima facie evidence of its validity and of Plaintiffs' exclusive right to use the trademark pursuant to 15 U.S.C. § 1057(b).

28.    The MESSI Trademark qualifies as a famous mark, as that term is used in 15 U.S.C. §1125(c)(1), and it has been continuously used and never abandoned. Since Plaintiffs launched the MESSI Products, Plaintiffs have followed a defined strategy for positioning their brand, marketing, promoting the product line in the industry and to consumers, and establishing distribution channels. Plaintiffs' promotional efforts for the MESSI Products include significant online advertising and marketing campaigns, including through the official MESSI Store website and online store; authorized and licensed retail partners such as Adidas; and official MESSI Store social media channels, including Instagram and Facebook, as well as other digital and commercial platforms. Plaintiffs have expended substantial time, money, and other resources on advertising and otherwise promoting the MESSI Products.

29.    The MESSI Products have become enormously popular, driven by MESSI's reputation as one of the greater soccer players of all time, and the MESSI Products have acquired

national and worldwide fame and recognition because of its uniquely recognizable design and association with MESSI.

30.    Plaintiffs own all rights, including without limitation, the rights to reproduce the trademarked design in copies, to prepare derivative works based upon the trademarked design, and to distribute copies of the trademarked design to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the MESSI Trademark as the owner of that trademark.

## THE DEFENDANTS' UNLAWFUL CONDUCT

31.    The success of the MESSI Products has resulted in significant counterfeiting. Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

32.    Defendants have persisted in creating such online marketplaces and internet stores that contribute to the hundreds of billions of dollars of counterfeit goods sold each year. According to an intellectual property rights seizures statistics report issued by the U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone.

33.    Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine MESSI Products. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet

Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

34.    Plaintiffs have not licensed or authorized Defendants to use the MESSI Trademark. None of the Defendants are authorized retailers of the genuine MESSI Products.

35.    Defendants also deceive unknowing consumers by using without authorization the MESSI Trademark within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MESSI Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine MESSI Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.

36.    On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

37.    Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

38. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, the Counterfeit Products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

39. In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[7]

40. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[8]

41. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. According to the previously cited 2024 U.S. Customs and Border Protection report on seizure statistics, in fiscal year 2024, "97% of [Intellectual Property Rights] seizures in the cargo environment occurred in the de minimis shipments." Further, counterfeiters such as Defendants typically operate multiple credit card

---

[7] *Buyers Beware! ICE HIS and CBP in Boston warn consumers about counterfeit goods during holiday shopping season*, U.S. Immigration and Customs Enforcement (Dec. 11, 2019) https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites").

[8] Rogue internet servers and sellers are a well-known tactic that have even been covered in Cabinet-level agency reports. *See* 2023 Review of Notorious Markets for Counterfeiting and Piracy (available online at https://ustr.gov/sites/default/files/2023_Review_of_Notorious_Markets_for_Counterfeiting_and_Piracy_Notorious_Markets_List_final.pdf).

merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

42.    Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

43.    On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. Analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

44.    Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the MESSI Trademark in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and New York over the Internet.

45.    Each Defendant Internet Store offers shipping to the United States, including New York in this Judicial District, and each Defendant has offered to sell counterfeit MESSI Products into the United States, including New York in this Judicial District.

46.    Defendants' use of the MESSI Trademark in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

47.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the MESSI Trademark, of the fame and incalculable goodwill associated therewith and of the popularity and success of the

MESSI Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

48.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and the MESSI Products.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114 *et seq.*)**
**[Against Defendants Designated in Schedule A to the Complaint]**

49.     Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–48 of this Complaint.

50.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered MESSI Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MESSI Trademark is highly distinctive mark. Consumers have come to expect the highest quality from Plaintiffs' products provided under the MESSI Trademark.

51.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the MESSI Trademark without Plaintiffs' permission:

*Exemplars of Genuine Products and Images Incorporating the MESSI Trademark*





14



*COMPARED TO*

*Exemplars of Counterfeit Products Sold by Defendants*









52.    Plaintiffs own all rights in the MESSI Trademark and are the official source of MESSI Products. The United States Registrations for the MESSI Trademark (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the MESSI Trademark and are willfully infringing and intentionally using counterfeits of the MESSI Trademark. Defendants' willful, intentional, and unauthorized use of the MESSI Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

53.    Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

54.    The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

55.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known MESSI Trademark.

**<u>SECOND CAUSE OF ACTION</u>**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a) *et seq.*)**
**[Against Defendants Designated in Schedule A to the Complaint]**

56.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–48 of this Complaint.

57.    Defendants' promotion, marketing, offering for sale, and sale of counterfeit MESSI Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

58.    By using the MESSI Trademark in connection with the sale of counterfeit MESSI Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

59.    Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

60.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

### THIRD CAUSE OF ACTION
### UNFAIR COMPETITION (New York Common Law)
### [Against Defendants Designated in Schedule A]

61.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–48 of this Complaint.

62.    Plaintiffs have not licensed or authorized Defendants to use the MESSI Trademark, and none of the Defendants are authorized retailers of genuine MESSI Products.

63.    Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering products for sale in connection with Plaintiffs' MESSI Trademark.

64.    Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

65.    Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

66.    In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking MESSI Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the text and metadata of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

67.    On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

68.    Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## DEMAND FOR RELIEF

69.    Plaintiffs hereby demand judgment as follows:

    a.    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

        i.    using the MESSI Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the

19

distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine MESSI Product or is not authorized by Plaintiffs to be sold in connection with the MESSI Trademark;

ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine MESSI Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the MESSI Trademark;

iii. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

iv. further infringing the MESSI Trademark and damaging Plaintiffs' goodwill;

v. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any Plaintiffs trademark, including the MESSI Trademark or any reproductions, counterfeit copies, or colorable imitations thereof;

b. Entry of an Order that the Marketplace Platforms, including without limitation Temu and Walmart, and any other online marketplace account through which Defendants are selling Counterfeit Products, disable and cease displaying any

advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products.

c.  That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MESSI Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

d.  In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the MESSI Trademark.

e.  That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

f.  Award any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

70.  Plaintiffs hereby demand a trial by jury.

Dated:      March 25, 2026              Respectfully,

*/s/ Matthew L. Schwartz*
Matthew L. Schwartz
Katie Kavanaugh (*pro hac vice application forthcoming*)
Christopher Tom
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
mlschwartz@bsfllp.com
kkavanaugh@bsfllp.com
ctom@bsfllp.com

*Attorneys for Plaintiffs LIONEL ANDRÉS MESSI CUCCITTINI and LMGM, S.L.U.*

21